426 P.2d 415

**STATE of Arizona, Appellee,**

**v.**

**Eugene PERRY, Appellant.**

**No. I CA–CR II6.**

Court of Appeals of Arizona.

April 14, 1967.

Darrell F. Smith, Atty. Gen., by Carl Waag, Asst. Atty. Gen., for appellee.

Denzil G. Tyler, Winslow, for appellant.

CAMERON, Chief Judge.

This is an appeal from a verdict and judgment of guilty to the crime of aggravated assault (§ 13–245 A.R.S.). We are called upon to answer three questions:

1. Was it reversible error to allow the victim of the assault to testify what the x-rays taken after the assault showed regarding his broken rib?

2. Was the court required to define in its instructions to the jury the phrase "serious bodily injury"?

3. Under the facts of the case was the court required to instruct the jury as to lesser included offenses?

The facts necessary for a determination of this matter are as follows. Defendant Eugene Perry was apprehended about midnight 21 August 1966 by the police of Winslow, Arizona, for fighting and intoxication. He was placed in the "drunk tank" of the Winslow City Jail which, at the time, was also occupied by an Indian named King Naha who earlier in the evening had been arrested on the charge of being under the influence of alcohol. Defendant and King Naha were the only two occupants of the "drunk tank" during the evening of 21 August and the morning of 22 August. The testimony of one of the trustees in the jail at the time was that he observed the defendant beating and kicking Mr. Naha and that Mr. Naha was "hollering" for help. In addition to the kicking and beating which the victim received, the testimony of the trustee indicated that the defendant also had taken off his belt and was holding it around King Naha's neck, choking him. The testimony of the trustee indicated the defendant was beating King Naha because King Naha refused to give him a cigarette.

At about 4:00 a. m. the police sergeant on duty found King Naha on the floor of a corner of the "drunk tank". The sergeant testified that King Naha was bloody and bleeding and appeared to be seriously injured. He was taken to the hospital and was found to have a cut approximately two and one-half inches long on the back of his head, a black eye, and a broken rib. The cut was open and bleeding.

King Naha testified that he was 65 years of age and to the events as he remembered them. On being examined by the County Attorney he testified:

"Q Then what happened to you?

"A After that he kicked me. Kicked me on the left ribs. I think that is when he broke my ribs, one of my ribs, anyway.

"Mr. Tyler: Object to what he thinks.

"The Court: Do you know that is when it happened?

"A Sir?

"The Court: Never mind, he may answer."

Later on the County Attorney asked:

"Q What effect did it have on your rib cage where you pointed that you were kicked?

"A Well, the x-ray at the hospital showed there was one broken rib, and then bruises.

"Mr. Tyler: I object to what the x-ray showed and ask it be stricken.

"The Court: Record show the objection is overruled."

The information as filed in the Superior Court charged defendant with the crime of aggravated battery and that the defendant "* * * being a person of robust health and strength, use force and violence upon the person on one King Naha, an elderly and decrepit person of the age of 65 years, inflicting serious bodily injury upon said King Naha, in violation of A.R.S. 13–245." The reliance upon the defendant being of robust health and the victim being one who is decrepit was abandoned by the County Attorney at the time the matter was submitted to the jury, and we are concerned only with Subsection A(5) of 13–245 A.R.S. which defines assault as aggravated:

"When serious bodily injury is inflicted upon the person assaulted."

From a verdict and judgment of guilty and a sentence of not less than four nor more than five years the defendant appeals.

## TESTIMONY CONCERNING THE X-RAYS

■ Defendant first complains that the court incorrectly admitted the evidence concerning what the x-rays taken at the hospital showed regarding his broken rib. This objection came after the defendant had already testified that his ribs were broken. We would agree with defendant that, while a victim may testify as to the extent of his injuries, he may not testify as to what the x-rays showed when it is obvious that this information is hearsay as to the one testifying. In the instant case, however, the testimony as to the broken ribs had been previously introduced, and we do not believe that such later testimony is reversible error. As was stated:

"However for this court to reverse a case, the error must be prejudicial under the facts of the case under consideration. This court has held the test to be: had the error not been committed there was reasonable probability that the verdict might have been different." State v. Ybarra, 97 Ariz. 200, 202, 398 P.2d 905, 907 (1965).

Even had the question not been asked and answered or the objection sustained, we do not feel that there is any probability the result would have been different.

## MUST "SERIOUS BODILY INJURY" BE DEFINED

■ Defendant contends that it was error for the court not to submit to the jury in its instructions a definition of "serious bodily injury", and that it was error to allow the jury to draw its own conclusions as to the degree of seriousness necessary to convert what otherwise might be a misdemeanor into a felony. Defendant contends that far too much was left to the speculation of the jury as to how serious an injury must be in order that the defendant be convicted of the felony. Defendant cites no Arizona cases in point and we have found none. We agree, however, with the State that the words "serious bodily injury" are words of ordi-

nary significance, and it is not required that the court define the term in the instructions since they are well understood by any jury of ordinary intelligence. In any event, the beating sustained would come under and be within any definition that could be given by the court. Our Supreme Court has recently stated:

"They grabbed Edwards, pushed him to the ground, and beat him. The evidence in the instant case is sufficient to support a verdict for assault with intent to commit a felony—that felony being aggravated assault. This is sufficient, and the contention of the appellants that there was no showing of infliction of serious bodily injury or a showing that means were used calculated to inflict great bodily injury, is unfounded." State v. Blankenship, 99 Ariz. 60, 67, 406 P.2d 729, 733 (1965).

We believe that the evidence in the case clearly indicates "serious bodily injury" and that no instruction was necessary.

## MUST THE COURT INSTRUCT AS TO LESSER INCLUDED OFFENSE

■ The defendant requested an instruction charging the jury that they must resolve any reasonable doubt in favor of the lesser degree of the crime. Defendant's instruction did not define the lesser degree and defendant did not request such additional instruction. The requested instruction was denied and we feel properly so. The defendant testified to the effect that he inflicted no injuries on King Naha and that any injuries to King Naha were received before the defendant was put in the cell with King Naha. Under these circumstances and considering the injuries of the victim, the defendant was guilty of aggravated assault or not guilty of any offense at all, and an instruction as to lesser included offenses would not have been indicated. Our Supreme Court has stated:

"As to the matter of the simple assault. —The information necessarily charges a simple assault when it charges 'assault with a deadly weapon', but that alone is not sufficient to entitle the defendant to two forms of verdict because if, in this case, he is not guilty of the higher offense he is not guilty of simple assault. Where the proof goes to the higher crime, it is not error to refuse to instruct on the lesser or included offense." McDaniels v. State of Arizona, 62 Ariz. 339, 346, 158 P.2d 151, 154 (1945).

Verdict and judgment affirmed.

DONOFRIO and STEVENS, JJ., concur.